**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD SLAVIN, R06833, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-CV-____ |
| | ) | |
| v. | ) | |
| | ) | Judge Matthew F. Kennelly[1] |
| LATOYA JA'NAE HUGHES, in her official and | ) | |
| individual capacities as the Acting Director of the | ) | Trial By Jury Demanded |
| Illinois Department of Corrections, | ) | |
| JAMES KELLER, in his individual capacity as | ) | |
| the former Food Services Program Manager for the | ) | |
| Illinois Department of Corrections, and JENNIFER | ) | |
| CARTER, in her official and individual | ) | |
| capacities as Food Services Program Manager | ) | |
| for Dixon Correctional Center, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY AND STATEWIDE INJUNCTIVE RELIEF

Plaintiff EDWARD SLAVIN, through legal counsel, brings this suit against Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER pursuant to, *inter alia*, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc-1. This suit arises from Defendants' systemic statewide custom and practice to deliberately fail to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people in adult correctional centers across the entire state of Illinois, knowing that it would deprive incarcerated Jewish people, including Plaintiff EDWARD SLAVIN, of their clearly established right to receive nutritionally adequate kosher meals, in violation of RLUIPA and the First Amendment to the United States Constitution.

---

[1] Pursuant to Local Rule 40.3(b)(1)(B), this case is properly assigned to Judge Matthew F. Kennelly because the most recently filed complaint initiated by Plaintiff was captioned *Slavin v. Tanner*, Case No. 20-CV-1180 (*Slavin I*), previously pending before Judge Kennelly. *Slavin I* was dismissed on March 19, 2024.

Defendants' systemic statewide custom and practice imposes an unjustified, overly restrictive and substantial burden on the clearly established rights of incarcerated Jewish people, including Plaintiff EDWARD SLAVIN, to exercise their religion and is being done without a need to achieve a compelling governmental interest using the least restrictive means or, alternatively, is not reasonably related to achieving a penological interest, to survive scrutiny under RLUIPA and the First Amendment, respectively.

Plaintiff EDWARD SLAVIN seeks declaratory and statewide injunctive relief against Defendants LATOYA JA'NAE HUGHES and JENNIFER CARTER and all persons acting under their direction and control at adult correctional centers across the entire state of Illinois. Plaintiff further seeks compensatory and punitive damages against all Defendants. Plaintiff EDWARD SLAVIN alleges as follows:

## NATURE OF SUIT

1.      All claims for which relief are being sought by this suit are on the basis of injuries that occurred on or after September 22, 2022 and will continue to occur unless or until Defendants LATOYA JA'NAE HUGHES and JENNIFER CARTER and all persons acting under their direction and control, are enjoined from further violating the rights of incarcerated Jewish people, including Plaintiff EDWARD SLAVIN, who are being denied nutritionally adequate kosher meals in adult correctional centers managed and controlled by the Illinois Department of Corrections (IDOC) across the entire state of Illinois.

2.      By intentionally and deliberately refusing to offer nutritionally adequate kosher meals on a reliable and consistent basis, Defendants LATOYA JA'NAE HUGHES, JAMES KELLER, JENNIFER CARTER and all persons acting under their direction and control force

scores of incarcerated Jewish people across the entire state of Illinois to violate their core religious beliefs on a daily basis in violation of, *inter alia*, RLUIPA.

3.      By denying Jewish people nutritionally adequate kosher meals on a reliable and consistent basis, scores of incarcerated Jewish people, including Plaintiff EDWARD SLAVIN, are frequently forced to violate the tenets of their faith and break kosher to avoid extreme hunger caused by being chronically underfed with nutritionally inadequate kosher food options.

4.      RLUIPA is a civil rights law that protects the religious freedoms of persons confined to prisons, jails, and certain other institutions in which the government exerts a degree of control far greater than that which is found in civilian society.

5.      Pursuant to RLUIPA, "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering the compelling governmental interest." 42 U.S.C. §2000cc-1(a).  The compelling interest standard and least restrictive means analysis are to be read in the conjunctive, not disjunctive.  *Holt v. Hobbs*, 574 U.S. 352, 362-63 (2015).

6.      In introducing the bill that would become RLUIPA, former U.S. Senator Edward M. Kennedy noted that institutionalized persons were often denied opportunities to practice their religion even when such practice would not have harmed the discipline, order or safety of the institutions in which they were incarcerated.

7.      Senator Kennedy also noted what criminal justice experts had been saying for years, namely, that restrictions on the practice of religion in the prison context can be counter-productive because sincere faith and worship can be an indispensable part of rehabilitation.

8.     The Illinois General Assembly purported to share Senator Kennedy's opinion about the value of faith to promote rehabilitation in penological settings.

9.     In 2023, the General Assembly passed legislation aimed at protecting the religious liberties of religiously observant prisoners confined in IDOC correctional centers.

10.     HB 3055, titled "The Faith Behind Bars Act," was signed into law by Illinois Governor Jay Robert "J.B." Pritzker, and is codified at 730 ILCS 220/1, *et seq.*

11.     In passing the Faith Behind Bars Act, the General Assembly published its "findings and declaration of policy," underlying the legislative intent of the new law, stating in relevant part:

Sec. 5. Findings and declarations of policy.

(a)  The General Assembly hereby finds, determines, and declares the following that:

> (2) **Without a spiritual-based transformation there is little hope for sincere, lasting change in any of us**.  Without a faith-based after-care living situation an ex-offender has little chance of succeeding on the street. *See* 730 ILCS 220/5(a)(2).
>
> * * * *
>
> (4) According to a Pew Research Center 2012 Study, Religion in Prisons, 50 state survey of Prison Chaplains, about 71% of chaplains identify as Protestants, 13% as Catholics, 7% as Muslims, **and the remainder identify with other religions, including Judaism** and Native American spirituality. *See* 730 ILCS 220/5(a)(4).

12.     The Faith Behind Bars Act gives incarcerated persons "a right to practice his or her faith in a correctional institution or facility absent harm or without undue burden to the State's correctional system." 730 ILCS 220/15(a).  Also, all "correctional institutions and facilities in this State **shall provide** [incarcerated persons] the ability to pray by facilitating time and clean location, fast by allowing [an incarcerated person] to abstain from food when appropriate, **and respect dietary restrictions absent harm or without undue burden on the state's correctional facility**." 730 ILCS 220/15(a)-(d).

4

13.     But the Faith Behind Bars Act is empty rhetoric used to promote a political narrative that Governor J.B. Pritzker staunchly defends religious freedoms, including alleged accommodation of religious diets by IDOC.

14.     Governor J.B. Pritzker's self-serving political narrative is belied by the realities of the daily lives of incarcerated Jewish people housed in IDOC adult correctional centers across the entire state of Illinois, whose religious freedoms have been systemically violated during the entirety of Governor J.B. Pritzker's administration, in contravention of RLUIPA and the First Amendment to the United States Constitution.

15.     Due to Defendants' conscious choice to not provide nutritionally adequate kosher meals to incarcerated Jewish people on a consistent and reliable basis, many incarcerated Jewish people in IDOC adult correctional centers across the entire state of Illinois are effectively forced to violate their religious tenets and consume non-kosher foods in order to acquire minimum daily sustenance to survive.  Governor J.B. Pritzker's IDOC compels Jewish people of faith to the Hobson's choice between extremely oppressive hunger that compromises their physical health and safety, or fidelity to their religion.

16.     This lawsuit is not motivated by a desire to win the "prison litigation lottery." Plaintiff EDWARD SLAVIN is a believer and genuine adherent of the Jewish faith.

17.     Because Governor J.B. Pritzker has demonstrated himself to be unable or unwilling to stop his hand-picked IDOC Executive Director(s) and their underlings from infringing on the fundamental religious rights of incarcerated Jewish people to consume nutritionally adequate kosher meals, Plaintiff EDWARD SLAVIN files this suit.

## JURISDICTION, VENUE AND GRIEVANCE EXHAUSTION

18.     The federal subject matter jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983, and the First Amendment to the United States Constitution, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc, *et. seq*. This Court accordingly has jurisdiction over this suit pursuant to 28 U.S.C. §§1331 and 1343(a).

19.     The declaratory and statewide injunctive relief sought by Plaintiff EDWARD SLAVIN is authorized by 42 U.S.C.§2000cc-2(a) and 28 U.S.C.§§2201 and 2202.

20.     Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. §§ 93(a) and 1391(b)(1) and (2).

21.     Defendant LATOYA JA'NAE HUGHES resides in the Northern District of Illinois.[2]  Upon information and belief, Defendants JAMES KELLER and JENNIFER CARTER likewise reside in the Northern District of Illinois.

22.     Additionally, a substantial part of the systemic custom and practice giving rise to this suit occurred in the Northern District of Illinois. *Vernon v. Elberson*, 2024 U.S. Dist. LEXIS 10386, at *7 (N.D. Ill., Jan. 20, 2024) (Kennelly, J.) ("To be substantial, it is enough to establish that the events that took place in Illinois were part of the historical predicate for the instant suit . . . [t]he events giving rise to [Plaintiff's] claim include the order for application of good time credits, which was entered by a judge in Cook County, and the first miscalculation of that time by IDOC personnel, which took place at the NRC, also is in this District.").

---

[2] Undersigned counsel's pre-filing investigation reveals that Defendant LaToya Ja'Nae Hughes is a resident of the Northern District of Illinois. She currently serves as a member of the Hearing Board for the Chicago Office of the ARDC and is a former 15-year veteran prosecutor of the Office of the Cook County State's Attorney. Out of respect for Defendant Hughes' privacy, other specific details concerning her residence are not being alleged in this publicly-filed pleading.  Nor will counsel share that information with his incarcerated client. Plaintiff reserves the right to provide more details with the Court in the event that Defendant Hughes denies or otherwise disputes that she resides in the Northern District of Illinois.

23. Here, the statewide systemic custom and practice of denying nutritionally adequate kosher meals began (and has continued) to harm Plaintiff EDWARD SLAVIN in the Northern District of Illinois; first at Stateville Correctional Center and currently at Dixon Correctional Center.

24. Pursuant to Local Rule 40.3(b)(1)(B) of the Northern District of Illinois "a subsequent civil rights complaint shall be assigned to the judge whom the most recently filed complaint was assigned." The most recently filed complaint initiated by Plaintiff EDWARD SLAVIN was captioned *Slavin v. Tanner*, Case No. 20-CV-01180 (*Slavin I*), previously pending before U.S. District Judge Matthew F. Kennelly. *Slavin I* was dismissed on March 19, 2024. Therefore, this suit is properly assigned to Judge Kennelly.

25. Plaintiff EDWARD SLAVIN has complied with all procedural prerequisites to initiate this suit imposed by the Prison Litigation Reform Act of 1996 (PLRA). To wit, he thoroughly exhausted all IDOC internal grievance procedures when, on July 8, 2023, he was issued a final arbitration decision personally signed by Defendant LATOYA JA'NAE HUGHES, denying his internal grievance that is the basis for the causes of action for the declaratory and statewide injunctive relief being brought in this suit. A true and correct copy of the exhausted grievance is attached as **Exhibit 1**.

26. This suit is being maintained, in part, against Defendants LATOYA JA'NAE HUGHES and JENNIFER CARTER as an officer suit pursuant to *Ex. Parte Young*, 209 U.S. 123 (1908) for prospective equitable relief to remedy ongoing violations of federal constitutional and statutory law. Therefore, this suit is not barred by sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution.

7

27.     This suit is not barred by the doctrine of qualified immunity.  For decades, incarcerated persons have had a clearly established right to not have their religious freedoms substantially burdened absent the government showing a compelling state interest, as repeatedly emphasized by the U.S. Court of Appeals for the Seventh Circuit, which has held:

> Aside from the fact that RLUIPA employs a standard already contained in the [Religious Freedoms Restoration Act], **it is noteworthy that the components of its analysis have been used in constitutional litigation for some time**.  For example, the difficult burden laid on a defendant who must show that its conduct was the least restrictive means of achieving some compelling state interest **has been established for decades**. Similarly, **the prohibition against substantially burdening sincerely held religious beliefs is well-established in Free Exercise Clause cases**. *Koger v. Bryan*, 523 F.3d 789, 802-03 (7th Cir. 2008) (internal citations omitted and emphasis added).

28.     After the *Koger v. Bryan* decision, the U.S. Court of Appeals for the Seventh Circuit reiterated the clearly established nature of a prisoner's right to receive nutritionally adequate meals that accommodate their religious practices, stating "we have repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden" upon his faith, *Thomson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) and how prisons cannot "force a prisoner to choose between adequate nutrition and religious practice." *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019).

29.     The decisions in *Koger*, *Thomson* and *Jones* are clearly established law that pre-date the unlawful conduct that is the basis for the causes of action alleged in this suit.

30.     Plaintiff EDWARD SLAVIN has suffered, and continues to suffer, deprivations of his federally protected constitutional and statutory rights as a direct and proximate cause of the personal acts or intentional omissions to act by Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER.

31.     Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER personally participated in the alleged constitutional and statutory deprivations alleged

herein, insofar as they knew about the systemic custom and practice at issue in this suit, and facilitated it, approved it, condoned it or "turned a blind eye to it" out of fear of what they might see. *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012); *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Moreover, Defendants LATOYA JA'NAE HUGHES and JENNIFER CARTER are proper parties to this suit because they are the persons responsible for ensuring that any injunctive relief is carried out. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

## PARTIES

32.     Plaintiff EDWARD SLAVIN is a citizen of the United States. At all relevant times, Plaintiff EDWARD SLAVIN is, and has been, a prisoner incarcerated within IDOC with the assigned prisoner identification number R06833.

33.     Plaintiff EDWARD SLAVIN is currently confined at Dixon Correctional Center in Dixon, Illinois, located within the Northern District of Illinois. He has been incarcerated at Dixon Correctional Center since September 22, 2022.

34.     Plaintiff EDWARD SLAVIN is an individual protected by RLUIPA because he is "residing in or confined to an institution" as defined by the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. §1997.

35.     Defendant LATOYA JA'NAE HUGHES is the Acting Director for IDOC, having served in this capacity since April 1, 2023. Immediately prior, she served as the Chief of Staff to former IDOC Executive Director Rob Jeffreys. At all times relevant to this suit, Defendant LATOYA JA'NAE HUGHES was acting under color of state law.

36.     Defendant LATOYA JA'NAE HUGHES is the final policymaker and decisionmaker with authority to approve all IDOC policies and practices, including but not limited

to, IDOC policies and practices governing accommodation of religious practices of prisoners. (*See* Ill. Admin. Code, Title 20 § 425.15) and food services (*See* 20 Ill. Admin. Code §502).

37.     Defendant LATOYA JA'NAE HUGHES, in joint concert with Defendants JAMES KELLER and JENNIFER CARTER, has perpetuated and promoted a pre-existing statewide systemic custom and practice of deliberately and intentionally failing to reliably and consistently provide a nutritionally adequate kosher diet to IDOC incarcerated Jewish people in a manner that conforms with dietary requirements imposed by the tenets of the Jewish faith.  This statewide systemic custom and practice violates the clearly established rights of incarcerated Jewish people to receive nutritionally adequate kosher meals, affecting scores of incarcerated Jewish people housed in IDOC adult correctional centers across the entire state of Illinois.

38.     Defendant LATOYA JA'NAE HUGHES has the authority to remedy the ongoing failure to reliably and consistently provide a nutritionally adequate kosher diet in a manner that conforms with Jewish dietary requirements to Plaintiff EDWARD SLAVIN and all other similarly situated Jewish individuals in IDOC custody across the entire state of Illinois.

39.     Defendant LATOYA JA'NAE HUGHES is being sued in her official capacity for declaratory and prospective (statewide injunctive) relief, and in her individual capacity for compensatory damages, punitive damages and attorneys' fees, under 42 U.S.C.§1983, as permitted by 42 U.S.C.§1988, due to her personal participation in the infringement of Plaintiff's rights.

40.     Defendant JAMES KELLER is the former Food Service Administrator for IDOC. Defendant JAMES KELLER was acting under color of state law.  This suit is being brought against Defendant JAMES KELLER for his personal participation in the acts and omissions to act which caused Plaintiff EDWARD SLAVIN to be deprived of his constitutional and statutory rights from

September 22, 2022 up to an including when Defendant JAMES KELLER resigned from his employment with the Illinois Department of Corrections, effective 2023.

41.     Prior to his resignation, as the Food Service Administrator for IDOC, the duties and responsibilities of Defendant JAMES KELLERS included implementing and reviewing the policies and procedures for the safe, sanitary preparation, service, transport and storage of food, creating and implementing the IDOC master prisoner menu, reviewing and approving procurement specifications and requisitions for food, equipment and supplies, including kosher meals for Jewish individuals housed at adult correctional centers across the entire state of Illinois, including Dixon Correctional Center.

42.     Defendant JAMES KELLER, in joint concert with Defendants LATOYA JA'NAE HUGHES and JENNIFER CARTER, perpetuated and promoted a pre-existing statewide systemic custom and practice of deliberately and intentionally failing to reliably and consistently provide a nutritionally adequate kosher diet to incarcerated Jewish people in a manner that conforms with dietary requirements imposed by the tenets of the Jewish faith.  This statewide systemic custom and practice violates the clearly established rights of incarcerated Jewish people to receive nutritionally adequate kosher meals, affecting scores of incarcerated Jewish people housed in IDOC adult correctional centers across the entire state of Illinois.

43.     Defendant JAMES KELLER had the authority to remedy the ongoing failure to reliably and consistently provide a nutritionally adequate kosher diet in a manner that conforms with Jewish dietary law to Plaintiff EDWARD SLAVIN and all other similarly situated Jewish individuals in IDOC custody across all of Illinois.

44.    Defendant JAMES KELLER is being sued in his individual capacity for compensatory damages, punitive damages and attorneys' fees, under 42 U.S.C.§1983, as permitted by 42 U.S.C.§1988, due to his personal participation in the infringement of Plaintiff's rights.

45.    Defendant JENNIFER CARTER is the Food Service Program Manager for Dixon Correctional Center.  At all times relevant to this suit, Defendant JENNIFER CARTER was acting under color of state law.

46.     Defendant JENNIFER CARTER plans, coordinates, supervises and directs all phases of IDOC's food service program for Dixon Correctional Center.

47.    The duties and responsibilities of Defendant JENNIFER CARTER include implementing and reviewing the policies and procedures for the safe, sanitary preparation, service, transport and storage of food, implementing the IDOC master prisoner menu at Dixon Correctional Center, reviewing and approving procurement specifications and requisitions for food, equipment and supplies, including kosher meals for Jewish individuals housed at Dixon Correctional Center.

48.    Defendant JENNIFER CARTER, in joint concert with Defendants LATOYA JA'NAE HUGHES and JAMES KELLER, has perpetuated and promoted a pre-existing statewide systemic custom and practice of deliberately and intentionally failing to reliably and consistently provide a nutritionally adequate kosher diet to incarcerated Jewish people in a manner that conforms with dietary requirements imposed by the tenets of the Jewish faith.  Defendant JENNIFER CARTER, specifically, knowingly and intentionally served nutritionally inadequate kosher meals to incarcerated Jewish people at Dixon Correctional Center pursuant to this systemic statewide custom and practice.

49.    Defendant JENNIFER CARTER has had, and continues to have, the authority at Dixon Correctional Center to remedy the ongoing failure to reliably and consistently provide a

nutritionally adequate kosher diet in a manner that conforms with Jewish dietary law to Plaintiff EDWARD SLAVIN and all other similarly situated Jewish individuals in custody at Dixon Correctional Center.  But instead, she has intentionally chosen to ignore the problem and serve non-kosher and/or nutritionally inadequate kosher meals to incarcerated Jewish people at Dixon Correctional Center.

50.     Defendant JENNIFER CARTER is being sued in her official capacity for declaratory and prospective relief, and in her individual capacity for compensatory damages, punitive damages and attorneys' fees, under 42 U.S.C.§1983, as permitted by 42 U.S.C.§1988, due to her personal participation in the infringement of Plaintiff's rights while in custody at Dixon Correctional Center.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

51.     IDOC is subject to accreditation requirements of the American Correctional Association (ACA).

***Jewish people comprise one of the smallest religious minorities within IDOC.***

52.     Jewish people comprise one of the smallest faith-based populations within IDOC.

53.     With their population estimated to be approximately 100-150 incarcerated persons at any given time, incarcerated Jewish people comprise approximately less than one percent of the entire IDOC prison population, which hovers annually at approximately 29,000 to 30,000 incarcerated persons statewide.

54.     Upon being taken into IDOC custody, all incarcerated persons are subjected to an intake processing system which, among other things, classifies each incarcerated person's religious affiliation (e.g., Catholic, Protestant, Muslim, Jewish, Buddhist, etc.).

55.     That religious affiliation classification is then documented in the incarcerated person's master inmate file, which is kept and maintained by the Records Office of the incarcerated person's "parent facility" (i.e., the correctional center(s) where they serve their sentence).

56.     The incarcerated person's religious affiliation classification dictates the religious services IDOC offers to them, including but not limited to, accommodations for religious dietary needs.

57.     In his Rule 30(b)(6) testimony given in *Artis v. Tanner*, Case No. 17-CV-6905, Defendant JAMES KELLER admitted under oath that the IDOC maintains a computer system called "Offender 360" that enables IDOC to identify the religious affiliation classification of any person who IDOC's Chaplaincy Department has classified as "Jewish" and eligible for a kosher diet, testifying in relevant part:

Q:     Okay.  Is the kosher diet list kept at the facility level as opposed to IDOC's recordkeeping?

A:     There is a mechanism in the computer system that identifies an individual if it's put in a computer that way by chaplaincy.  And that would identify who is or isn't on a kosher diet.

Q:     Okay.  Do you know if that has a name, that computer record system?

A:     Offender 360 I believe is the name of it.

(*See* Keller Dep. at 33:1-33:16, attached as **Exhibit 2**)

58.     A direct result of incarcerated Jewish people being such a microscopic religious minority inside IDOC -- as a systemic statewide custom and practice perpetuated and promoted by Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER -- IDOC does not prioritize fulfilling its duties to accommodate the religious practices of its incarcerated Jewish people statewide, particularly when doing so costs IDOC money.

14

59.     In IDOC's world, incarcerated Jewish people are religious minorities whose religious needs are routinely ignored because their requests for religious accommodation are considered by IDOC to be too costly or pose an administrative inconvenience.

60.     IDOC's hierarchy and institutional mindset places a premium on administrative convenience and financial bottom lines, at the expense of the civil rights of incarcerated Jewish people such as Plaintiff EDWARD SLAVIN.

61.     Specifically, due to budgetary constraints, IDOC does not maintain a separate kosher kitchen in any of its correctional centers across the entire state of Illinois.[3]

62.     Having no separate kosher kitchens for the preparation and provision of kosher foods, IDOC purchases pre-packaged kosher meals that are supposed to be served to IDOC's incarcerated Jewish population.  However, those pre-packaged meals are not: (1) served at every meal; and (2) nutritionally adequate to satisfy the daily caloric and nutritional needs of an adult.

63.     IDOC routinely denies incarcerated Jewish people nutritionally adequate kosher meals on a *systemic* basis because paying for kosher meals for a relatively small group of prisoners increases costs.

64.     To contain costs, it is Defendants' systemic custom and practice to not source reliable, consistent suppliers of nutritionally sufficient kosher meals to sufficiently meet the demand of its miniscule population of incarcerated Jewish people.

---

[3] To eliminate any confusion, Plaintiff EDWARD SLAVIN is not alleging that failure to maintain a separate kosher kitchen at each IDOC adult correctional center violates the United States Constitution and/or federal statutory law. Nor does he seek relief that would require the creation of separate kosher kitchens at any IDOC correctional center, much less, *every* correctional center across the entire state of Illinois.  Plaintiff is requesting: (a) a declaratory judgment that the Defendants have not been providing him nutritionally adequate kosher meals for breakfast, lunch and dinner as a result of a systemic statewide custom and practice; and (b) an injunction, requiring Defendants Hughes, Carter and all persons acting under their direction and control to provide Plaintiff and all other incarcerated Jewish people with nutritionally adequate kosher meals for breakfast, lunch and dinner and to permanently cease and desist from the systemic statewide custom and practice that currently interferes with Plaintiff receiving nutritionally adequate kosher meals.

***Plaintiff's sincerely held religious beliefs command him to maintain a kosher diet.***

65.     Plaintiff EWARD SLAVIN is an observant Jew, meaning that he has a sincere religious belief in, and is a sincere adherent of, Judaism.

66.     Plaintiff EDWARD SLAVIN has been an observant Jew his entire life. His family and rabbi know that he is an observant Jew.

67.     As part of his Jewish faith, one of Plaintiff EDWARD SLAVIN's sincerely held religious beliefs is that he is **commanded by God** to maintain a kosher diet.

68.     Plaintiff EDWARD SLAVIN believes he is defiled when he consumes food that does not adhere to kosher dietary law (kashrut) and, further, that he cannot pray to God when he is defiled. Keeping kosher is therefore essential to Plaintiff EDWARD SLAVIN'S Jewish faith and his daily religious practice.

69.     Historically, IDOC has not questioned the sincerity of Plaintiff EDWARD SLAVIN'S devotion to his Jewish faith, as is evident from how the master inmate file of Plaintiff EDWARD SLAVIN indicates that IDOC has classified him as being an adherent of the Jewish faith.

70.     IDOC's belief that Plaintiff EDWARD SLAVIN is a sincere adherent to the Jewish faith is further confirmed by how he is approved to: (1) to receive kosher meals exclusively reserved for persons of the Jewish faith; (2) participate in religious activities exclusively reserved for prisoners of the Jewish faith, including services for Jewish holidays such as *Shevat*, *Purim*, *Passover*, *Rosh Hashanah* and *Yom Kippur*; and (3) participate in monthly counseling, visiting and support sessions facilitated by the Hinda Institute, led by Rabbis Binyomin Scheiman, Schneur Scheiman and Menachem Scheiman.

71.     These prison chaplains affiliated with the Hinda Institute visit incarcerated Jewish people in IDOC custody at adult correctional centers located all across the entire state of Illinois approximately once every month.

72.     The chaplains of the Hinda Institute provide a prison ministry that listens, counsels, teaches and brings religious reading materials to incarcerated Jewish people to give them a spiritual outlet for their Jewish faith and hope for the future.  This faith ministry is intended to reduce recidivism and/or ensure institutional safety and security by promoting faith-based activities which, research shows, helps reduce prison violence.

73.     As an observant Jew, Plaintiff EDWARD SLAVIN has received ministry services from Rabbi Scheiman and the Hinda Institute for nearly twenty years.

***"Kashrut" – kosher dietary requirements of the Jewish faith.***

74.     Jewish dietary requirements, or "kashrut," are a significant part of Jewish identity and religious practice.

75.     Based on verses in the Torah, these laws have been interpreted by rabbinic authorities over thousands of years.

76.     In Hebrew, "kosher" is defined as "fit" or "proper."  Generally speaking, kosher food is any food fit for consumption by observant Jewish people.

77.     Observant Jewish people keep kosher for spiritual reasons and also to feel unity and a shared identity with others who practice Judaism.

78.     For observant Jewish people eating kosher food is not just a way of feeling connected with Judaism; it is primarily a **commandment from God**.

79.     Keeping kosher is a central tenet of Judaism observed by incarcerated Jewish people anywhere and everywhere they are incarcerated by IDOC, in every IDOC correctional center across the entire state of Illinois.

80.     The requirements of kosher govern a comprehensive dietary system. Strict rabbinic rules prescribe not only which foods can be eaten but also how food is to be prepared and served.

81.     Kashrut divides food into three categories:

    a.  Meat, or "fleishig," meaning everything made of meat and poultry;

    b.  Dairy, or "milching," meaning milk, cheese, butter and yogurt; and

    c.  "Pareve," meaning any foods that are neither meat nor dairy, including fish, eggs and plant-based foods.

82.     There are many kosher diet rules. A non-exhaustive list of the important rules, include:

    a.  An observant Jewish person should never eat meat and dairy together. In strict kosher kitchens, people use separate utensils for meat and dairy products, which are not washed in the same water, to avoid cross-contamination;

    b.  Pareve foods are considered neutral, so an observant Jewish person can combine these foods with either meat or dairy. The only exception is fish, which is pareve, but Jews cannot eat fish with meat;

    c.  For meat to be considered kosher, the animal must be slaughtered in a specific manner, known as shechita. A kosher-certified butcher ("shochet"), should perform the butchering of the animal. Jewish people can only eat the forequarters of permitted animals, and should soak the meat before eating to remove all traces of blood; and

    d.  Many foods are **not** kosher, meaning observant Jewish people cannot consume them or allow these foods to become cross-contaminated with kosher foods, including:

        • *Sea animals* that do not have fins and scales, such as shrimp, lobster, crab and oysters.

        • *Meat products* from pigs, rabbits, squirrels, camels, kangaroos, and horses.

        • *Certain birds of prey or scavenger birds*, such as eagles, owls, hawks and seagulls.

        • Because most *insects* are not considered kosher, it is critical that fruits and vegetables be thoroughly inspected and washed thoroughly before being eaten to avoid contamination.

83. To maintain kosher, observant Jewish people must be vigilant about cross-contamination between meat and dairy, meat and fish, and kosher foods and non-kosher foods. Foods that must not be combined should have separate equipment and preparation areas.

84. For illustration, if a microwave oven is used to warm up a cheeseburger, then an observant Jewish person would need to use a different microwave oven (that has not been used to prepare non-kosher foods) in order to maintain kosher, otherwise the microwave oven that has been tainted by the cheeseburger would be a source of cross-contamination.

85. Even if the raw ingredients are all kosher, the utensils and other items used in the preparation, service and consumption of the food must also be kosher in order for the meal itself to be kosher.

86. In order for utensils to be kosher, they must not come into contact with non-kosher foods. Kosher utensils must also be washed separately from non-kosher utensils. The utensils subject to these strict requirements include pots, pans, knives, forks, spoons, cutting boards, trays, ovens and stoves. These strict rules for food preparation ensure that kosher food is not contaminated by non-kosher ingredients.

87. Placing a non-kosher item, whether a piece of food or a utensil, with a kosher meal can render the entire meal tainted and unacceptable for consumption by an observant Jew.

88. Observant Jewish people believe that the Torah commands them to adhere strictly to these and all other aspects of kosher dietary law, in keeping with Jewish teaching and custom.

***Defendants have denied and continued to deny Edward Slavin a nutritionally
adequate kosher diet since his September 22, 2022 transfer to Dixon Correctional Center.***

89.     On September 22, 2022, Plaintiff EDWARD SLAVIN was transferred from Stateville Correctional Center to Dixon Correctional Center.  Both of these correctional centers are located in the Northern District of Illinois.

90.     According to IDOC Administrative Rule 502A, which governs food services, IDOC is required to offer daily food menus to its prisoners that meet minimum recommended dietary allowances, specifying in relevant part: "a) Menus shall meet minimum recommended dietary allowances. b) [a]ny foods which contain pork or pork by products [sic] shall be identified as such when served.  A substitute entrée shall be provided to those committed persons whose religious or dietary requirements prohibit consumption of pork."

91.     When Plaintiff EDWARD SLAVIN arrived at Dixon, he was listed in the IDOC Offender 360 computer system as requiring and being entitled to receive a kosher diet for all of his meals, according to the religious affiliation classification assigned to him by the Chaplaincy Department.

***Meals served for breakfast are not kosher.***

92.     When Plaintiff EDWARD SLAVIN arrived at Dixon Correctional Center, Dixon did not honor his prior designation by failing to provide nutritionally adequate kosher meals for all three of his daily meals.

93.     Historically, at IDOC adult correctional centers across the entire state of Illinois, incarcerated Jewish people have been, and continue to be, fed non-kosher meals for breakfast.

94.     The meals served for breakfast are often comprised of some variation of cereal, milk, hard-boiled eggs, and bread.

95.     IDOC does not train kitchen staff charged with the responsibility of preparing and dispensing kosher meals on the proper methods to prevent desecration of kosher meals through cross-contamination with non-kosher foods or utensils.

96.     The breakfast served to Plaintiff EDWARD SLAVIN was prepared in a non-kosher kitchen and was not prepared in a kosher manner and/or was allowed to become contaminated by coming into contact with non-kosher foods or utensils.

97.     During her tenure as Food Service Program Manager at Dixon Correctional Center, Defendant JENNIFER CARTER has known that the breakfast being served to incarcerated Jewish people was not kosher because the food was either not itself kosher, or was allowed to become contaminated by exposure to non-kosher foods, cooking utensils or contaminated cooking surfaces at Dixon Correctional Center.

98.     During her tenure as Food Service Program Manager at Dixon Correctional Center, Defendant JENNIFER CARTER has known that the kitchen staff charged with the responsibility of preparing and serving kosher foods had not been trained in the proper techniques and methods to ensure the integrity of kosher food so that it remain genuinely kosher.

99.     During her tenure as Food Service Program Manager at Dixon Correctional Center, Defendant JENNIFER CARTER has known that the kitchen staff charged with the responsibility of preparing and serving kosher foods had received no training concerning the RLUIPA and how the religious rights of incarcerated persons, including the right to accommodation for religious diets, must be protected by ensuring that food being served pursuant to a religious accommodation must comply with the specific religious practice of the prisoner's religious practice.

100.    During her tenure as Food Service Program Manager at Dixon Correctional Center, Defendant JENNIFER CARTER has known that the pre-packaged kosher meals being served to

21

incarcerated Jewish people were nutritionally inadequate yet she intentionally served those meals to incarcerated Jewish people.

101.    Despite her knowledge that the foods being served to Plaintiff EDWARD SLAVIN and other incarcerated Jewish people housed at Dixon Correctional Center was, in fact, not kosher and/or being allowed to become contaminated by exposure to non-kosher foods, cooking utensils and/or contaminated cooking surfaces, Defendant JENNIFER CARTER deliberately and knowingly chose to continue to serve nutritionally inadequate non-kosher foods to incarcerated Jewish people at Dixon Correctional Center with the knowledge and understanding that it would violate their religious rights as Jewish people.

***Pre-packaged meals served for lunch and dinner are labeled "kosher," but the portions are not nutritionally adequate.***

102.    Moreover, historically, pre-packaged lunch and dinner meals that IDOC Defendants claim to be "kosher" do not contain minimum calorie or nutrient requirements to comply with governing standards established by the ACA and IDOC Administrative Rule 502A.

103.    Similar to his prior experience at Stateville Correctional Center, Dixon Correctional Center provided Plaintiff EDWARD SLAVIN with pre-packaged meals for his lunch and dinner.

104.     Those meals are marked in the Hebrew language to signify that they are "kosher." (A true and correct demonstrative example of "Glatt Roast Kosher Turkey Meal" is attached as **Exhibit 3**)

105.    As is clearly evident from **Exhibit 3**, the pre-packaged kosher meals do not contain daily nutritional value and/or calorie information concerning the contents of the individually packaged meal, making it impossible for incarcerated Jewish people to know the caloric and daily nutritional value of each meal.  Based on the small portion size, alone, it is readily apparent that

each pre-packaged meal is insufficient to meet daily nutritional requirements for a lunch or dinner meal.

106.     In deposition testimony given in *Artis v. Tanner*, Stateville Food Service Manager Quentin Tanner admitted under oath that the pre-packaged kosher meals routinely served to incarcerated Jewish people in IDOC custody would not be adequate to feed a grown man, testifying in relevant part:

Q:     In your opinion – what you're saying is in your opinion, you think if you were to just serve the sealed kosher tray, that would not be adequate to feed a grown man, so that's why you add the [peanut butter and jelly], salad and fruit?

A:     In my opinion, **yes**.

(*See* Tanner Dep. at 121:8-123:24, attached as **Exhibit 4**)

107.     Defendant JAMES KELLER testified that not since the year 2017 has a licensed dietician evaluated and inspected the pre-packaged kosher meals to determine and confirm the caloric and/or nutritional content of the pre-packaged kosher meals met the minimum daily nutritional values required by Rule 502A, stating in relevant part:

Q:     Has any registered dietician or nutritionist reviewed the nutritional adequacy of the kosher diet that is served at Stateville?

A:     Yes.

Q:     Who has done that?

A:     Suzann Griswald Bailey.

Q:     When did Ms. Bailey review the nutritional adequacy of the kosher meal served at Stateville?

Q:     It would have been prior to her departure in August of 2017.

\* \* \* \*

Q:     Okay.  Do you know whether Ms. Bailey ever went to Stateville to review the nutritional value of the kosher diet served there?

23

A:    She went to all the facilities, but I don't know when exactly --

Q:    How --

A:    -- she was the dietician for 16 years.  She went to all the facilities every year.

(*See* Keller Dep. at 96:1 – 97:9, attached as **Exhibit 2**)

108.    In other words, IDOC has no idea whether the kosher pre-packaged meals its serves to incarcerated Jewish people are providing them with daily nutrition and minimum caloric requirements.

109.    At all times relevant to this suit, Defendant JENNIFER CARTER herself has known that the pre-packaged kosher meals were not nutritionally adequate because each of the kosher meals that she has provided and continues to provide at Dixon Correctional Center: (a) contain no nutritional information for the consumer; and (b) have not been evaluated for nutritional value by a registered dietician and/or nutritionist when such evaluations were discontinued at the direction of Defendant JAMES KELLER, effective August 2017.

110.    This is a *systemic* problem affecting not only Dixon Correctional Center, but all adult correctional centers across the entire state of Illinois because these pre-packaged meals are being served at all IDOC adult correctional centers in Illinois.  No matter where an incarcerated Jewish person is housed, they will confront the same deprivation of a nutritionally adequate kosher meal for breakfast, lunch and dinner.

***Defendants' custom and practice of practically starving out incarcerated Jews so they violate IDOC administrative rules whose violation is used as the basis to discontinue providing kosher meals to incarcerated Jewish people.***

111.    To further reduce the costs to provide incarcerated Jews with kosher meals, Defendants, historically, have manipulated and continue to manipulate IDOC Administrative Regulations to create sham reasons to declare incarcerated Jews to be "not Jewish," and therefore

24

ineligible to further receive kosher meals for alleged non-compliance with the kosher food regulations.

112.    The Defendants' scheme is simple.  IDOC rules mandate that only incarcerated Jews -- so "classified" by the Chaplaincy Department -- may receive kosher meals.  But the portion sizes for the pre-packaged kosher meals served for lunch and dinner are too small to meet the daily caloric and nutritional requirements for an adult male, and Defendants have known this for years, but have intentionally chosen to ignore the problem.

113.    As a result of being chronically underfed, it is an IDOC "open secret" that incarcerated Jewish people will often resort to purchasing non-kosher food from prison commissaries to use as "currency" to barter with other incarcerated persons for kosher food.

114.    Or, sadly, when extreme hunger is just too much for their bodies to physically withstand, some observant Jews suffer the indignity of breaking kosher in order to get sustenance to live.  This Hobson's choice subjects observant Jews to the shameful stigma of violating kashrut that is emotionally traumatic for observant Jews and can have lasting repercussions on their mental and emotional state long after their release from custody.[4]

115.    IDOC can become aware of incarcerated Jews having contact with non-kosher foods because IDOC tracks all commissary purchases and can observe prisoners at meal time. Regardless of whether IDOC personnel actually observe the incarcerated Jew consume non-kosher food, they can administratively suspend observant Jews from the kosher food program.  The net result is IDOC saves money by reducing the number of kosher meals required for purchase at the expense of the incarcerated Jewish person's religious rights.

---

[4] According to ancient Jewish laws, punishment for violating kashrut could include being subjected to 39 lashes with a whip or being confined in a wooden cabinet placed in front of the synagogue so that parishioners could spit on the transgressor as they entered and exited the synagogue.  In the modern era, within orthodox communities, parents have been known to subject their children to corporal punishment for intentionally breaking kosher.

116.    When an incarcerated Jewish person is suspended from the kosher food program, their only remedy is to submit themselves to IDOC's Kafkaesque administrate grievance process, which can take days, weeks, or even months to resolve; and are rarely resolved in favor of the incarcerated person.  In the interim, IDOC saves money on its kosher food budget because: (1) breakfast meals are the same as what is served to the general population and not genuinely kosher; and (2) there is one less Jewish person to whom pre-packaged kosher lunch and dinner meals must be provided.

117.    Defendant LATOYA JA'NAE HUGHES has had actual knowledge of this shameful situation by virtue of scores of "emergency" grievances pursued by incarcerated Jews, including Plaintiff EDWARD SLAVIN, wherein complaints contesting the portion size, nutritional adequacy or genuine integrity (i.e., are the pre-packaged meals genuinely "kosher" or merely labeled so), which she denies in "rubber-stamp" fashion.

118.    Incarcerated Jewish people are being denied nutritionally adequate meals on a systemic basis at IDOC correctional centers across the entire state of Illinois, including but not limited to, the following IDOC adult correctional centers: Stateville, Dixon, Joliet Treatment Center, Sheridan, Menard, Decatur, Hill, Pontiac, Illinois River, Western Illinois, Lawrence, Robinson, Pinckneyville, Centralia, Big Muddy and East Moline.

119.    Plaintiff EDWARD SLAVIN is not the only incarcerated Jewish person in IDOC custody being denied nutritionally adequate kosher meals because this a systemic problem affecting adult correctional centers across the entire state of Illinois.

120.    Multiple other incarcerated Jewish people in IDOC custody across the entire state of Illinois have similarly been denied nutritionally adequate kosher meals on a reliable and consistent basis, as corroborated by internal prison grievances and federal civil rights lawsuits filed

by incarcerated Jewish people housed in IDOC correctional centers during the past twenty years.

A non-exhaustive representative sampling include:

• *Williams v. Miller*, 04-CV-0342-MJR (Judge Michael J. Reagan) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Tamms Correctional Center.

• *Wallace v. Miller*, 09-CV-342-JPG (Judge Phillip M. Frazier) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Tamms and Menard Correctional Centers.

• *Williamson v. Twaddell*, 10-CV-3325 (Judge Sue E. Myerscough) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Stateville and Western Illinois Correctional Centers.

• *Spivey v. Love*, 11-CV-327-JPG-PMF (Judge J. Philip Gilbert) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Centralia, Pinckneyville and Menard Correctional Centers.

• *Dabbs v. Vaughn*, 12-CV-104-MJR (Judge Michael J. Reagan) - alleging, *inter alia*, denial of nutritionally adequate kosher meals at Lawrence Correctional Center.

• *Nixon v. Tanner*, 13-CV-2572 (Judge John Z. Lee) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Stateville Correctional Center.

• *Oliver v. Harner*, 14-CV-315-NJR-DGW (Judge Nancy J. Rosenstengel) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Menard Correctional Center.

• *Brame v. Hodge*, 14-CV-410-MJR (Judge Michael J. Reagan) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Lawrence Correctional Center.

• *Kellman v. Tanner*, 14-CV-8322 (Judge Virginia M. Kendall) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Stateville Correctional Center.

• *Johnson v. Harner*, 16-CV-398-SMY (Judge Staci M. Yandle) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Menard Correctional Center.

• *Artis v. Tanner*, 17-CV-6905 (Judge John Z. Lee) - alleging, *inter alia*, denial of nutritionally adequate kosher meals at Stateville Correctional Center.

• *Anderson v. Pfister*, 18-CV-627 (Judge Charles R. Norgle) - alleging, *inter alia*, denial of nutritionally adequate kosher meals at Stateville Correctional Center.

• *Gakuba v. Doe,* 18-CV-1065 (Judge Nancy J. Rosenstengel) – alleging denial of nutritionally adequate kosher meals at Robinson Correctional Center.

• *Ruffin v. Baldwin*, 18-CV-1774 (Judge Nancy J. Rosentengel) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Lawrence Correctional Center.

• *Terrell v. Tanner*, 18-CV-2018 (Judge Thomas M. Durkin) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Stateville Correctional Center.

• *Ridley v. Arnold*, 19-CV-1133-NJR (Judge Nancy J. Rosenstengel) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Pinckneyville Correctional Center.

• *Slavin v. Tanner*, 20-CV-1180 (Judge Matthew F. Kennelly) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Stateville Correctional Center.

• *Alcaraz v. Tanner*, 20-CV-5755 (Judge Robert M. Dow) - alleging denial of nutritionally adequate kosher meals at Stateville Correctional Center.

• *Artis v. Tanner*, 21-CV-5579 (Judge John Z. Lee[5]) - alleging, *inter alia*, denial of nutritionally adequate kosher meals at Stateville Correctional Center.

• *Anderson v. Murphy*, 22-CV-3570 (Judge Franklin U. Valderrama) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Stateville Correctional Center.

• *Oliver v. Llewellyn*, 23-CV-1221 (Judge Colin S. Bruce) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Western Illinois Correctional Center.

• *Jordan v. Brookhart*, 23-CV-2654 (Judge Nancy J. Rosenstengel) – alleging, *inter alia*, denial of nutritionally adequate kosher meals at Pinckneyville Correctional Center.

121.    This representative sampling of kosher meal lawsuits represents only a miniscule percentage of the internal grievances made by observant incarcerated Jews to IDOC concerning Defendants' systemic statewide custom and practice.

122.    IDOC's grievance system classifies internal grievances involving allegations of interference or infringement of religious practices as "emergencies."  As such, IDOC administrative regulations mandate that religious grievances are reviewed on an expedited basis by prison wardens.  Moreover, as a historic practice, it is the IDOC Executive Director who ultimately decides appeals incarcerated persons pursue of a warden's denial of their emergency grievances involving religious practices.

---

[5] This case was reassigned to Judge Matthew F. Kennelly after Judge John Z. Lee was elevated to the U.S. Court of Appeals for the Seventh Circuit.

123.    By virtue of this review process for grievances involving religious practices, including her *personal* review of the exhausted July 8, 2023 emergency grievance that is the basis of this lawsuit (*see supra* ¶25), Defendant LATOYA JA'NAE HUGHES has had, and continues to have, personal knowledge about the systemic statewide deprivation of nutritionally adequate kosher meals to incarcerated Jewish people at numerous IDOC adult correctional centers across the entire state of Illinois.

124.    Despite her knowledge of these undeniable facts, Defendant LATOYA JA'NAE HUGHES has deliberately chosen to ignore the gravity and systemic nature of this shameful statewide custom and practice and routinely denies the grievances of observant Jews in "rubber-stamp" fashion.  In other words, she simply does not care and has chosen to turn a blind eye to the obvious violations of the law.

125.    By virtue of his creation of the master menu and responsibility for sourcing and procuring nutritionally adequate kosher meals, Defendant JAMES KELLER has had, and continues to have, personal knowledge about the systemic statewide deprivation of nutritionally adequate kosher meals to incarcerated Jewish people at numerous IDOC adult correctional centers across the entire state of Illinois.

126.    Despite his knowledge of these undeniable facts, Defendant JAMES KELLER deliberately chose to ignore the gravity and systemic nature of this shameful statewide custom and practice and deliberately chose to not source sufficient nutritionally adequate kosher meals for incarcerated Jewish people, knowing full well that the few meals that are procured are woefully insufficient to meet demand.

127.    Defendant JAMES KELLER also knew that after August 2017, alleged kosher meals were not being evaluated by a registered dietician and/or nutritionist to determine that the

kosher meals were, in fact, nutritionally adequate and compliant with Administrative Directive 502 and/or ACA accreditation requirements.

128.    Knowing that such evaluations were being routinely skipped by August 2017, Defendant JAMES KELLER knew or strongly suspected, that the pre-packaged meals being provided to incarcerated Jewish people were "insufficient to feed a grown man" and would seriously injure incarcerated Jewish people trying to adhere to their faith by eating the alleged kosher meals being provided by Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER, on and after September 22, 2022.

129.    By virtue of her implementation of the master menu, Defendant JENNIFER CARTER has had, and continues to have, personal knowledge about how the systemic statewide deprivation of nutritionally adequate kosher meals to incarcerated Jewish people has directly harmed incarcerated Jewish people at Dixon Correctional Center.

130.    Namely, as alleged above, Defendant JENNIFER CARTER has deliberately caused nutritionally inadequate kosher meals to be served to Plaintiff EDWARD SLAVIN and other similarly situated incarcerated Jewish people housed at Dixon Correctional Center.  She did so with prior knowledge that her conduct would deprive incarcerated Jewish people of their religious accommodations, in violation of RLUIPA and the First Amendment to the United States Constitution.

131.    Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER, in addition to IDOC General Counsel Robert Fanning, had actual knowledge that IDOC personnel -- particularly wardens, chaplains and food service managers assigned to individual correctional centers -- were in dire need of training due to the high frequency and volume of

internal prison grievances and lawsuits initiated by incarcerated Jewish people complaining that they had been denied nutritionally adequate kosher meals on a reliable and consistent basis.

132.    As a result of the consistent denial of nutritionally adequate kosher meals, Plaintiff EDWARD SLAVIN feels frustrated, discriminated against, and disrespected in his Jewish faith. He feels that Defendants' systemic practice of denying him and other Jewish inmates kosher meals is unfair, immoral, illegal and without penological justification.

***Defendants' custom and practice to deny incarcerated Jewish people nutritionally adequate kosher meals cannot be remedied by suits for monetary damages.***

133.    Defendants' custom and practice to deny incarcerated Jewish people nutritionally adequate kosher meals cannot be remedied by lawsuits for monetary damages.  Indeed, paying monetary damages creates the false perception that Defendants are "solving" the problem, when all they are doing is "playing the litigation odds" while perpetuating the cycle of indignity upon incarcerated Jewish people.

134.    The Defendants' systemic custom and practice of denying nutritionally adequate kosher meals to incarcerated Jewish people is not an accident, but rather an outgrowth of circumstances that disproportionately impact the ability of IDOC's Jewish population to meaningfully challenge its unlawful practice concerning kosher meals by pursuing legal actions seeking injunctive relief.

135.    Relatively speaking, IDOC's Jewish population is small and many (but certainly not all) incarcerated Jewish people tend to have comparably shorter terms of incarceration than other incarcerated persons in IDOC custody.

136.    The PLRA requires all incarcerated persons to completely exhaust their internal grievances before filing suit.  Exhaustion begets delays that can, and often do, result in incarcerated Jewish people being released from IDOC custody before they can satisfy the administrative

31

exhaustion prerequisite for filing suit. And once released from custody, they lose standing to sue for injunctive relief.

137.     Those circumstances -- and blatant manipulation of prisoner transfers to different correctional centers to manufacture grounds to raise a mootness defense[6]-- empower the Defendants to consistently repeat the cycle of unlawful violations because many Jewish people do not remain incarcerated long enough to maintain a lawsuit for injunctive relief that can be decided on the merits.

138.     The few kosher food lawsuits that survive dismissal or summary judgment are then settled for monetary damages because too often prisoner plaintiffs are *pro se* and intimidated by the power imbalance of having to take a civil rights case to trial against skilled lawyers employed by the Office of the Illinois Attorney General who have specialized expertise in the arcane issues posed by prisoner civil rights litigation.

139.     Moreover, those few kosher food cases that are commenced are: (1) often pursued against prison wardens, chaplains and food service officials, which necessarily focuses on a single prison and not the systemic nature of the problem across the entire state of Illinois; and (2) settled by paying nominal damages without Defendants ever changing the systemic custom and practice concerning the provision of kosher meals. This is done because Defendants have determined that it is cheaper to pay settlements than obey the law.

---

[6] As this Court is well aware from *Slavin I*, RLUIPA claims brought solely against a prison warden can (but not always) become moot where, unlike here, the alleged injury happened solely at a single prison and is unlikely to happen at the new prison. (Dkt. 133, *Slavin v. Tanner*, Case No. 20-CV-1180) The statewide custom and practice at issue in *Slavin II* is systemic and alleged to be happening at every IDOC adult correctional center across the entire state of Illinois when it becomes a parent facility for an incarcerated Jewish person. Transferring Plaintiff to a different parent facility will not render *Slavin II* moot, but could (and likely would) serve as a factual predicate for amending the pleadings to raise a First Amendment retaliation claim, exposing those responsible to liability for compensatory damages, nominal damages, punitive damages and/or injunctive relief. *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023).

140.    For decades, the systemic failure to provide Illinois incarcerated Jewish people nutritionally adequate kosher meals has been an open and notorious way for state government to "handle" its business; a fact readily apparent to current Illinois Attorney General Kwame Raoul and Illinois Comptroller Susana Mendoza and their respective predecessors.

141.    The Attorney General is charged with defending IDOC employees against prisoner §1983 lawsuits and has negotiated numerous settlements of kosher food lawsuits, including several listed in Paragraph No. 120, *supra*.

142.    The Illinois Comptroller must pay the resulting verdicts, judgments and/or settlements for such lawsuits, including the 2011 judgment in *Nelson v. Miller*,[7] where, after the U.S. Court of Appeals denied the defendants qualified immunity, the district court ordered the defendants to pay a per diem for the 298 consecutive days that the plaintiff's religious rights had been violated.

143.    Indeed, the outcome in *Nelson v. Miller* succinctly reveals a major motive behind the Defendants' unlawful statewide custom and practice: it costs more to obey the law, and it is cheaper to pay <u>damages</u> settlements to mostly *pro se* litigants whose: (a) claims for compensatory damages are capped by the PLRA; (b) claims require no payment of attorneys' fees because the plaintiffs often are self-represented; and (c) lack of legal training makes them unable to repel legal tactics routinely employed by IDOC to hamstring lawsuits seeking injunctive relief.

144.    For incarcerated Jewish people who are unlikely to ever be released from IDOC custody (such as Plaintiff EDWARD SLAVIN), IDOC's "way of doing business" forces him to choose between obeying his religious beliefs at the cost of his physical health and well-being, or eat non-kosher foods to sustain himself at the expense of his core religious beliefs.

---

[7] 2011 U.S. Dist. LEXIS 145431 (S.D. Ill., Dec. 19, 2011).

145.    These undeniable facts demonstrate that this is an injury to the statutory and constitutionally-protected rights of incarcerated Jewish people, including Plaintiff EDWARD SLAVIN, that is clearly capable of repetition but evading meaningful review by the courts for determining the appropriateness of injunctive relief.

146.    This suit seeks to bring those shameful practices -- which have flourished under the hypocrisy of Governor J.B. Pritzker's administration -- to an end, declaring that incarcerated Jewish people in Illinois have a right to receive a nutritionally adequate kosher diet in prisons and enjoining Defendants LATOYA JA'NAE HUGHES and JENNIFER CARTER to provide nutritionally adequate kosher meals to incarcerated Jewish prisoners at all Illinois correctional facilities.

147.    Plaintiff EDWARD SLAVIN is seeking relief in the form of: (a) a declaratory judgment, declaring IDOC's failure to provide nutritionally adequate kosher meals to be a violation of the religious freedoms of Illinois incarcerated Jewish people, guaranteed by RLUIPA, the Free Exercise Clause of the First Amendment to the United States Constitution; and (b) prospective injunctive relief permanently requiring IDOC's Executive Director and the Statewide Food Services Program Manager, and anyone acting under their direction and control, to provide nutritionally adequate kosher meals at all IDOC facilities across Illinois.

***Defendants have had actual knowledge of the systemic custom and practice of denying nutritionally adequate kosher meals to incarcerated Jewish people statewide violates the law.***

148.    IDOC is a billion-dollar enterprise. According to IDOC's 2023 Annual Report, IDOC has an annual budget of approximately $1.6B, employs approximately 13,000 people and incarcerates approximately 30,000 people in fifty-four correctional centers across Illinois.

149.     According to the annual Financial Impact Statement submitted by Defendant LATOYA JA'NAE HUGHES, pursuant to 730 ILCS 5/3-2-9, during fiscal year 2023, IDOC annually spent $46,743, per person, on incarceration.

150.     Because of its sheer size and the nature of its core functions, IDOC has created and perpetuated an internal hierarchical administrative structure purportedly intended to promote the orderly administration of correctional centers statewide concerning the numerous aspects of the daily operations of those facilities so that they comply with all regulatory and statutory obligations that govern IDOC operations.

151.     Given the annual cost associated with incarcerating a person, there are multiple additional avenues by which Defendants LATOYA JA'NAE HUGHES and JAMES KELLER acquired actual knowledge that for years IDOC has not reliably and consistently provided nutritionally adequate kosher meals to incarcerated Jewish people across all of Illinois.

***Actual Knowledge Acquired Through OBS – Defendants Hughes, Keller and Carter.***

152.     IDOC has an Office of Performance-Based Standards (OBS) tasked with promoting effective management of IDOC by systematically reviewing standards and activities of IDOC. According to IDOC's 2017 Annual Report, OBS is tasked with:

   • Analyzing compliance with existing laws, department rules, regulations, directives, standards or policies;

   • Assessing efficiency and effectiveness in utilization of resources;

   • Determining whether desired results are being achieved; and

   • Providing consultations to encourage compliance and promote greater administrative, operational and programmatic efficiency and effectiveness.

153.     On an annual basis, OBS audits all IDOC facilities to review the results of internal audits that all facilities are required to do for their facility on a monthly basis.  The purpose of the

OBS audit is to ensure that each facility is in compliance with IDOC rules, regulations, directives, standards or policies.

154.    By virtue of OBS annual audits, Defendant LATOYA JA'NAE HUGHES and her predecessors (including, but not limited to, former IDOC Executive Directors Rob Jeffreys, John Baldwin, Donald Stolworthy, Salvador "Tony" Godinez and Roger E. Walker, Jr.)  have known that IDOC correctional centers have consistently failed to provide nutritionally adequate kosher meals to incarcerated Jewish people at each and every IDOC adult correctional center across the entire state of Illinois.

155.    IDOC follows a 5-week cycle Master Menu.  Most of the food production is done by prison staff, overseen by corrections food service supervisors at individual correctional facilities.  The Master Menu is planned by the IDOC Food Service Department, managed and controlled by Defendant JAMES KELLER or his designee.  The Food Service Department, under Keller's direction, controls the meal menus for all IDOC correctional centers across all of Illinois.

156.    By virtue of his involvement in the preparation of the 5-week cycle Master Menu, Defendant JAMES KELLER has had actual knowledge that incarcerated Jewish people were not being provided nutritionally adequate kosher meals for breakfast, lunch or dinner, to ensure that they received the minimum daily required value of calories or nutrients as required by ACA accreditation requirements and/or IDOC Administrative Rule 502A.  (A true and correct copy of an IDOC kosher meal Master Menu for 2022-2023 is attached as **Exhibit 5**).

157.    By virtue of her implementation of the 5-week cycle Master Menu at Dixon Correctional Center, Defendant JENNIFER CARTER has had actual knowledge that incarcerated Jewish people were not being provided nutritionally adequate kosher meals for breakfast, lunch or

dinner, to ensure that they received the minimum daily required value of calories or nutrients as required by ACA accreditation requirements and/or IDOC Administrative Rule 502A.

158.   OBS annual audits have revealed that IDOC does not train its staff on proper handling and preparation of kosher meals, including but not limited to training on: (1) the definition of kosher food; (2) proper techniques for the preparation of kosher food; and (3) proper handling techniques to a ensure that kosher food does not become contaminated with non-kosher food or utensils.

***Actual knowledge that outdated IDOC regulations governing prisoner religious accommodations likely violate RLUIPA - Defendants Hughes, Keller and Carter.***

159.   Robert Fanning, Esq. is an attorney licensed to practice law in the state of Illinois.

160.   According to the website maintained and operated by IDOC, Attorney Fanning serves as the Chief Legal Counsel and leads the Legal Services Department, which is charged with the following duties and responsibilities:

[P]rovide department administrators with legal advice and counsel on an array of issues, coordinate legal representation with the Office of the Attorney General, **review proposed legislation**, assist assistant attorneys general with discovery and case management, **train staff on legal issues,** respond to correspondence . . . [t]he [Legal Services Department] attorneys **address issues involving staff, inmates, personnel, fiscal, medical and numerous other areas . . . [striving] to provide proper guidance to the [IDOC] in a manner that will assure individuals in custody of their constitutional right**." [sic] (see www.idoc.illinois.gov/aboutus/chieflegalcounsel.html, last accessed on May 31, 2024) (emphasis added)

(A true and correct copy of Mr. Fanning's biography is attached hereto as **Exhibit 6**).

161.   IDOC maintains a Religious Practices Advisory Board (Advisory Board), which is responsible for creating, reviewing and implementing policies and procedures that regulate prisoner religious practices, including the accommodation for prisoner's religious dietary needs, for all IDOC correctional facilities across all of Illinois.

162.    The Advisory Board is <u>not</u> comprised of outside religious leaders (e.g., priests, rabbis or Imams) representing the disparate faith communities of the numerous IDOC correctional facilities across Illinois.  To the contrary, the Advisory Board is comprised of IDOC insiders including wardens, assistant wardens and prison chaplains who are employed by the IDOC and have personal incentives to acquiesce to the will of the Executive Director instead of advocating for the protection and accommodation of religious freedoms of incarcerated persons.

163.    On information and belief, ascertained from the deposition testimony of IDOC Chaplain Brandon Llewellyn given in *Scaggs v. Jeffreys*, 3:19-CV-3144-CSB-EIL, IDOC General Counsel Robert Fanning is (and has been) a member of the Advisory Board.

164.    As a member of the Advisory Board, IDOC General Counsel Fanning, or one of his attorney delegates, participates in meetings of the Advisory Board where Board Members discuss issues focused exclusively on religious practices and policies within IDOC, including but not limited to, prisoner grievances concerning accommodation requests for religious diets and/or the adequacy of meals provided to incarcerated Jewish people due to religious accommodation requests.

165.    Since at least 2018, the Advisory Board has known that IDOC regulations -- promulgated in 1995 -- likely violated RLUIPA, as is evident from admissions made by IDOC in publications created and disseminated by IDOC.

166.    The IDOC maintains and circulates to all prison wardens and chaplains a periodical formally titled *Chaplaincy Handbook of Religious Beliefs and Practices* (Chaplaincy Handbook). The Chaplaincy Handbook was last revised in March 2018.

167.    The Chaplaincy Handbook "is designed to provide a general background into the beliefs and practices of religions contained in the handbook and to provide guidance with regard

to some of the common religious request situations faced in a correctional setting. It is not intended to provide theological expertise. This handbook was prepared to provide information useful for chaplains, administrators and other Illinois Department of Corrections (IDOC) staff on the beliefs and practices . . . [i]n sum, this handbook is a supplemental aid for implementing the current version of Department Rule 425 and any applicable administrative directive." (A true and correct copy of the relevant excerpts of Chaplaincy Handbook are attached as **Exhibit 7**).

168.    On page 6 of the Chaplaincy Handbook, there is a paragraph titled **"IMPORTANT NOTE"** and provides in relevant part:

> **IMPORTANT NOTE: Department Rule 425, which is actually part of the ILLINOIS ADMINISTRATIVE CODE, has not been changed by the Illinois Legislature since 1995 and, thus, it has not been amended to meet the standards of Illinois RFRA [Religious Freedoms Restoration Act] and the federal RLUIPA.** (emphasis in original) (*See* Excerpt of Chaplaincy Handbook, **Exhibit 7**)

169.    Attorney Fanning and the other attorney personnel within the Legal Services Department knew that the IDOC Administrative Rules set forth in the Chaplaincy Handbook were outdated and that there was a substantial likelihood that that IDOC correctional centers across the entire state of Illinois were likely violating the religious freedoms of incarcerated Jewish people by failing to consistently and reliably provide nutritionally adequate kosher meals to incarcerated Jewish people at IDOC correctional centers across Illinois.

170.    Despite having actual knowledge of the substantial likelihood that correctional centers were likely violating the religious freedoms of incarcerated Jewish people with regard to the provision of nutritionally adequate kosher meals, at no time relevant to this suit, did Attorney Fanning or any other member of the IDOC Legal Services Department provide training, guidance or instruction to IDOC personnel to ensure that IDOC was complying with federal and/or state constitutional, statutory or common law that required IDOC to consistently and reliably provide

nutritionally adequate kosher meals to incarcerated Jewish people housed in correctional centers across all of Illinois.

171.    Defendants LATOYA JA'NAE HUGHES and JAMES KELLER have attended scheduled meetings of the Advisory Board, during which they and members of the Advisory Board have discussed how IDOC personnel, including chaplains and food service personnel, have not received training on RLUIPA and were likely enforcing IDOC Administrative Rules in a manner violative of the RLUIPA.  Despite that knowledge, Defendants LATOYA JA'NAE HUGHES and JAMES KELLER failed to initiate training and instruction of IDOC chaplaincy and food personnel about religious accommodation issues relative to kosher foods for incarcerated Jewish people.

172.    Defendants LATOYA JA'NAE HUGHES and JAMES KELLER have attended scheduled meetings of the Advisory Board, during which they and members of the Advisory Board have discussed IDOC's kosher food program and whether it is adequately accommodating the religious practices of various religious denominations, including adherents of the Jewish faith, in light of the increasing volume and nature of emergency prisoner grievances and lawsuits alleging the nutritionally inadequacy of kosher meals being served as adult correctional facilities across the entire state of Illinois.

173.    During the course of those Advisory Board meetings, it is believed that Defendant JAMES KELLER would have shared the substance of his Rule 30(b)(6) testimony given in *Artis v. Tanner*, putting Defendant LATOYA JA'NAE HUGHES and the members of the Advisory Board on notice about the systemic deficiencies of IDOC's kosher food program for incarcerated Jewish people in IDOC custody across the entire state of Illinois.

## CAUSES OF ACTION

## COUNT I

### Continuing Violations of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §2000cc-1(a) – Infringement of Religious Freedoms

#### (Plaintiff Edward Slavin against
#### Defendants Latoya Ja'Nae Hughes and Jennifer Carter for declaratory and statewide injunctive relief)

174.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

175.    RLUIPA prohibits a state prison from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. §2000cc-1(a) (emphasis added).   The compelling interest standard and least restrictive means analysis are to be read in the conjunctive, not disjunctive. *Holt v. Hobbs*, 574 U.S. 352, 362-63 (2015).

176.    RLUIPA's provisions apply to Defendants' unlawful conduct alleged herein. As described more fully above, Defendants LATOYA JA'NAE HUGHES and JENNIFER CARTER in their official and capacities, infringed upon the federally-protected rights of Plaintiff EDWARD SLAVIN by promoting and perpetuating Defendants' custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people at correctional centers across the entire state of Illinois.

177.    Defendants' unlawful statewide systemic custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people at correctional centers across the entire state of Illinois substantially burdens Plaintiff EDWARD SLAVIN'S religious exercise.

41

178.    Defendants' unlawful statewide systemic custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people at correctional centers across the entire state of Illinois is not in furtherance of a compelling governmental interest and is an overly restrictive imposition on Plaintiff EDWARD SLAVIN'S religious exercise that cannot and does not meet RLUIPA's least-restrictive-means standard.

179.    Through Defendants' unlawful statewide systemic custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people at correctional centers across the entire state of Illinois, Defendants violate and will continue to violate the religious freedoms secured to Plaintiff EDWARD SLAVIN by RLUIPA.

180.    As a direct and proximate cause of Defendants' unlawful statewide systemic custom and practice, Plaintiff EDWARD SLAVIN is suffering and will continue to suffer irreparable injury at **any** Illinois adult correctional center where IDOC houses him absent the entry of injunctive relief.

181.    Plaintiff EDWARD SLAVIN is entitled to injunctive relief and declaratory relief against Defendants to halt and prevent the violation of his rights

182.    As a direct and proximate cause of the intentional, willful and wanton disregard for Plaintiff EDWARD SLAVIN's religious rights protected under RLUIPA by Defendants LATOYA JA'NAE HUGHES and JENNIFER CARTER, Plaintiff EDWARD SLAVIN has been, and will continue to be, subjected to irreparable harm in the form of continued violations of his ability to engage in bona fide religious activity, including being able to keep kosher as required by the tenets of his Jewish faith.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff EDWARD SLAVIN respectfully requests that this Honorable Court:

A.     DECLARE that Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER and all persons acting under their direction and control, have unlawfully burdened the religious free exercise rights of incarcerated Jewish people in IDOC custody across the entire state of Illinois, including Plaintiff EDWARD SLAVIN, without justification by a compelling governmental interest and without using the least restrictive means, in violation of RLUIPA, 42 U.S.C. §2000cc, *et. seq*.;

B.     ENTER a preliminary and permanent injunction: (1) prohibiting Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER and all persons acting under their direction and control from denying Jewish individuals who are in or will be in IDOC custody nutritionally adequate kosher meals on a consistent and reliable basis; (2) requiring Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER and all persons acting under their direction and control to provide, on a reliable and consistent basis, nutritionally adequate kosher meals (to include kosher meals served at breakfast, lunch and dinner) to incarcerated Jewish people who have a sincere desire to keep kosher in order to practice their faith; (3) requiring Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER and all persons acting under their direction and control, to provide mandatory training on proper methods for the preparation and handling of kosher meals by all persons who prepare and handle kosher meals within each and every adult correctional center maintained and operated by IDOC within Illinois; and (4) requiring Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER and all persons acting under their direction and control, to provide training to all wardens and chaplains at each and every adult correctional center operated by IDOC within Illinois concerning their duties and responsibilities to accommodate religious diets according to RLUIPA.

C.      AWARD Plaintiff EDWARD SLAVIN reasonable attorneys' fees and costs in this suit as provided by 42 U.S.C. §1988(b); and

D.      GRANT Plaintiff EDWARD SLAVIN such further relief as this Court deems appropriate and consistent with 28 U.S.C. §2202.

## COUNT II

### 42 U.S.C. §1983 – Continuing Deprivations of Free Exercise of Religion in Violation of the Free Exercise Clause of the First Amendment

### (Plaintiff Edward Slavin against
### Defendants Latoya Ja'Nae Hughes and Jennifer Carter for declaratory and statewide injunctive relief)

183.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

184.    The Free Exercise Clause of the First Amendment prohibits a substantial burden on Plaintiff's religious exercise unless the burden is reasonably related to a legitimate penological interest. *Neeley-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003-04 (7th Cir. 2019).

185.    Defendants' custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people at adult correctional centers across the entire state of Illinois substantially burdens Plaintiff EDWARD SLAVIN'S religious exercise.

186.    Defendants' custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people at adult correctional centers across the entire state of Illinois constitutes a substantial burden on Plaintiff EDWARD SLAVIN'S religious exercise that is not in pursuit of a compelling governmental interest.

187.    Through Defendants' custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people at adult correctional centers across the entire state of Illinois, Defendants violate and will continue to violate the

religious freedoms secured to Plaintiff EDWARD SLAVIN by the Free Exercise Clause of the First Amendment.

188.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff EDWARD SLAVIN is suffering and will continue to suffer irreparable injury.

189.    Plaintiff EDWARD SLAVIN is entitled to injunctive relief and declaratory relief against Defendants to halt and prevent the violation of his First Amendment rights.

190.    As described more fully above, in their official capacities, Defendants LATOYA JA'NAE HUGHES and  JENNIFER CARTER infringed upon the federally-protected rights of Plaintiff EDWARD SLAVIN and all other Jewish people incarcerated in IDOC facilities statewide, by promoting and perpetuating Defendants' custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to Jewish people incarcerated at adult correctional centers across the entire state of Illinois.

191.    As described more fully above, in her official capacity, Defendant JENNIFER CARTER infringed upon the federally-protected rights of Plaintiff EDWARD SLAVIN and all other Jewish people incarcerated at Dixon Correctional Center, by implementing Defendants' custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to Jewish people housed at Dixon Correctional Center.

192.    As a direct and proximate cause of the intentional, willful and wanton disregard for Plaintiff EDWARD SLAVIN's religious rights protected under the First Amendment to the United States Constitution by Defendants LATOYA JA'NAE HUGHES and JENNIFER CARTER, Plaintiff EDWARD SLAVIN has been, and will continue to be, subjected to irreparable harm in the form of continued violations of his ability to engage in bona fide religious activity, including being able to keep kosher as required by the tenets of his Jewish faith.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff EDWARD SLAVIN respectfully requests that this Honorable Court:

A.     DECLARE that Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER and all persons acting under their direction and control, have unlawfully burdened Plaintiff's religious free exercise rights that is not reasonably related to a legitimate penological interest, in violation of the First Amendment to the United States Constitution;

B.     ENTER a preliminary and permanent injunction: (1) prohibiting Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER  and all persons acting under their direction and control from denying Jewish individuals who are in or will be in IDOC custody nutritionally adequate kosher meals on a consistent and reliable basis; (2) requiring Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER and all persons acting under their direction and control to provide, on a reliable and consistent basis, nutritionally adequate kosher meals (to include kosher meals served at breakfast, lunch and dinner) to incarcerated Jewish people who have a sincere desire to keep kosher in order to practice their faith; (3) requiring Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER and all persons acting under their direction and control, to provide mandatory training on proper methods for the preparation and handling of kosher meals by all persons who prepare and handle kosher foods within each and every correctional center maintained and operated by IDOC within Illinois; and (4) requiring Defendants LATOYA JA'NAE HUGHES, JENNIFER CARTER and all persons acting under their direction and control, to provide training to all wardens and chaplains at each and every correctional center operated by IDOC within Illinois concerning their duties and responsibilities to accommodate religious diets according to the First Amendment to the United States Constitution.

C.    AWARD Plaintiff EDWARD SLAVIN reasonable attorneys' fees and costs in this suit as provided by 42 U.S.C. §1988(b); and

D.    GRANT Plaintiff EDWARD SLAVIN such further relief as this Court deems appropriate and consistent with 28 U.S.C. §2202.

## COUNT III

### 42 U.S.C. §1983 – Continuing Deprivations of Free Exercise of Religion in Violation of the Free Exercise Clause of the First Amendment

**(Plaintiff Edward Slavin against
Defendants Latoya Ja'Nae Hughes, James Keller and Jennifer Carter for compensatory and punitive damages)**

193.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

194.    With respect to this Count III, Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER are being sued in their individual capacities only.

195.    The Free Exercise Clause of the First Amendment prohibits a substantial burden on Plaintiffs' religious exercise unless the burden is reasonably related to a legitimate penological interest. *Neeley-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003-04 (7th Cir. 2019).

196.    Defendants' custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people at correctional centers across the entire state of Illinois substantially burdens Plaintiff EDWARD SLAVIN'S religious exercise.

197.    Defendants' custom and practice of failing to reliably and consistently provide nutritionally adequate kosher meals to incarcerated Jewish people at correctional centers across the entire state of Illinois constitutes a substantial burden on Plaintiff EDWARD SLAVIN'S religious exercise that is not in pursuit of a compelling governmental interest.

198. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff EDWARD SLAVIN is suffering and will continue to suffer an impairment and deprivation to exercise his First Amendment rights.

199. Plaintiff EDWARD SLAVIN is entitled to compensatory and punitive damages against Defendants to compensate him for depriving him of his First Amendment rights.

## RELIEF REQUESTED

WHEREFORE, Plaintiff EDWARD SLAVIN respectfully requests that this Honorable Court:

A. DECLARE that Defendants LATOYA JA'NAE HUGHES, JAMES KELLER, JENNIFER CARTER and all persons acting under their direction and control, have unlawfully burdened Plaintiff's religious free exercise rights that is not reasonably related to a legitimate penological interest, in violation of the First Amendment to the United States Constitution;

B. AWARD Plaintiff EDWARD SLAVIN compensatory and punitive damages against Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER as provided by 42 U.S.C. §1983;

C. AWARD Plaintiff EDWARD SLAVIN reasonable attorneys' fees and costs in this suit as provided by 42 U.S.C. §1988(b); and

D. GRANT Plaintiff EDWARD SLAVIN such further relief as this Court deems appropriate and consistent with 28 U.S.C. §2202.

## COUNT IV

## INDEMNIFICATION – 5 ILCS 350/1

**(Plaintiff Edward Slavin against
Defendants Latoya Ja'Nae Hughes, James Keller and Jennifer Carter)**

200. Each of the foregoing paragraphs are incorporated as if restated fully herein.

201. Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER during all times relevant to the allegations alleged herein, have been, or were, employees of the State of Illinois, as that term is used in 5 ILCS 350/1(b).

202. Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER are entitled to indemnity from the State of Illinois provided Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER serve notice upon the State of Illinois of any judgment entered herein.

203. Under clearly established law, indemnification of Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and JENNIFER CARTER by the State of Illinois does not constitute suit against the State of Illinois barred by the Eleventh Amendment. *Stoner v. Wisconsin Dep't of Agric., Trade & Consumer Prot.*, 50 F.3d 481, 483 (7th Cir. 1995) ("It would be absurd if all a state had to do to put its employees beyond the reach of section 1983 and thereby make the statute ineffectual . . . was to promise to indemnify state employees for any damages awarded in such a suit."); *Brzowski v. Baldwin*, Case No. 17-CV-9339, 2018 U.S. Dist. LEXIS 173711, at *3 (N.D. Ill. Oct. 9, 2018) (Kennelly, J.) ("[the indemnification] count is not a claim against the State of Illinois; it is a request for an injunction ordering the defendants to submit their damages to the State for indemnification.")

## RELIEF REQUESTED

WHEREFORE, Plaintiff EDWARD SLAVIN respectfully requests that in the event that this Honorable Court awards Plaintiff EDWARD SLAVIN the declaratory and prospective statewide injunctive relief or the compensatory and punitive damages sought herein, that the Court also:

A. ORDER Defendants LATOYA JA'NAE HUGHES, JAMES KELLER and/or JENNIFER CARTER to submit to the State of Illinois for payment any award of

damages and Plaintiff's reasonable attorneys' fees and costs incurred in the prosecution of this case pursuant to 42 U.S.C.§1988; and

B.       GRANT Plaintiff EDWARD SLAVIN such further relief as this Court deems appropriate and consistent with 28 U.S.C. §2202.

### JURY DEMAND

Plaintiff EDWARD SLAVIN hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues raised in this Complaint for Declaratory and Statewide Injunctive Relief, which are triable by right of a jury.

PLAINTIFF EDWARD SLAVIN

By: */s/ Devlin Joseph Schoop*
Counsel for Plaintiff

Date: June 7, 2024

Devlin Joseph Schoop, Esq.
Henderson Parks, LLC
140 South Dearborn St., Suite 1020
Chicago, IL 60603
Tel.: (312) 262-2900
dschoop@henderson-parks.com